## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2015, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Sean G. Thomasson
Thomasson, Thomasson, Long & Guthrie, P.C.
Columbus, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Jodi Kathryn Stein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kevin Hiten,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | August 31, 2015<br><br>Court of Appeals Case No.<br>03A01-1503-CR-126<br><br>Appeal from the Bartholomew Circuit Court<br><br>The Honorable Stephen R. Heimann<br><br>Trial Court Cause No.<br>03C01-1302-FB-1128 |

**Bradford, Judge.**

## Case Summary

[1] Appellant-Defendant Kevin Hiten was involved in a large-scale methamphetamine production operation. Hiten, of his own volition, admitted to being the individual responsible for the production of the methamphetamine. In relation to his participation in the drug operation, Appellee-Plaintiff the State of Indiana (the "State") charged Hiten with numerous crimes. The State also alleged that Hiten was a habitual substance offender. Hiten eventually pled guilty to Class D felony possession of methamphetamine, Class D felony possession of a single precursor, and to being a habitual substance offender. The trial court accepted Hiten's guilty plea and sentenced him to an aggregate eight-year sentence.

[2] On appeal, Hiten contends that the trial court abused its discretion in sentencing him. He also contends that the four-year sentence enhancement which was imposed by virtue of his status as a habitual substance offender was inappropriate. Concluding that the trial court did not abuse its discretion in sentencing Hiten and that the four-year sentence enhancement is not inappropriate, we affirm.

# Facts and Procedural History

[3] On December 10, 2012, Indiana State Police Trooper Christopher Lockman went to Hiten's home after learning that Hiten had been involved in a domestic disturbance. Trooper Lockman informed Hiten that Hiten's ex-wife, Charity, had claimed that Hiten had threatened her during an argument. Hiten denied threatening Charity. As Trooper Lockman was preparing to leave, Sergeant

Jimmy Green of the Bartholomew County Sheriff's Department arrived and explained to Trooper Lockman that he believed that Hiten had been driving a stolen vehicle. Trooper Lockman checked the VIN of the vehicle in question and determined that it was indeed stolen.

[4] Trooper Lockman then re-approached Hiten's residence. Hiten allowed Trooper Lockman to enter the residence to talk about the stolen vehicle. Hiten claimed to have the title to the vehicle in question in a padlocked room in his basement. Hiten and Trooper Lockman went to the basement. Hiten told Trooper Lockman that he did not have a key to the room but offered to cut the padlock. Hiten attempted to cut the padlock, but was unsuccessful. Hiten then asked Trooper Lockman to cut the padlock.

[5] Hiten opened the door after Trooper Lockman cut the padlock. Trooper Lockman was immediately able to smell the odor of marijuana coming from the room. Trooper Lockman observed a leafy substance, which he believed to be marijuana, in plain sight. Trooper Lockman also observed what he believed to be pseudoephedrine packets on the ground. Based on what he observed, Trooper Lockman obtained a search warrant for Hiten's residence and the surrounding buildings.

[6] While executing the search warrant, investigating officers found digital scales, a "very enormous" amount of lithium batteries, a bag of marijuana, methamphetamine, a glass smoking pipe containing burnt methamphetamine, coffee filters, more than $12,000.00 in cash, and approximately 292,000

pseudoephedrine pills. Tr. p. 155. Investigating officers also found a sawed-off shotgun and over fifty other firearms.

[7] Hiten, of his own volition, informed Trooper Lockman that he was the "middle man" in an operation for the manufacture of methamphetamine. Tr. p. 157. Hiten indicated that he would receive product used to manufacture methamphetamine from various individuals and would manufacture the methamphetamine. He would then distribute the completed methamphetamine to individuals in Bartholomew and Brown Counties.

[8] The State subsequently charged Hiten with Count I, Class B felony possession of methamphetamine; Count II, Class C felony possession of a single precursor; Count III, Class D felony dealing in a sawed-off shotgun; Count IV, Class D felony receiving stolen auto parts; Count V, Class A misdemeanor possession of marijuana; Count VI, Class C felony possession of a single precursor; and Count VII, Class C felony possession of a controlled substance. The State also alleged that Hiten was a habitual substance offender.

[9] During the course of proceedings, Hiten's son, Dustin, claimed that the firearms did not belong to Hiten but rather belonged to him, his cousin, his grandfather, and his brother. In addition, Dr. Shelvy Keglar testified that Hiten is an "addicted individual" who has relapsed on several occasions. Tr. p. 25. Dr. Keglar recommended that, instead of incarceration, Hiten be remanded to an intensive outpatient treatment program. Alternatively, Dr. Keglar opined that Hiten was likely to respond to short term imprisonment or probation.

On January 22, 2015, Hiten pled guilty to the lesser included offenses of Class D felony possession of methamphetamine and Class D felony possession of a single precursor. He also admitted to being a habitual substance offender. Pursuant to the terms of the plea agreement, the remaining counts were dismissed and sentencing was left to the discretion of the trial court, with the maximum aggregate sentence capped at eight years. On March 5, 2015, the trial court imposed a two-year sentence for each of Hiten's convictions and ordered that the sentences would run consecutively. The trial court also imposed a four-year sentence enhancement by virtue of Hiten's status as a habitual substance offender, for an aggregate eight-year sentence. This appeal follows.

# Discussion and Decision

Hiten challenges his aggregate eight-year sentence on appeal. In doing so, Hiten contends that the trial court abused its discretion in sentencing him. He also contends that the four-year enhancement imposed due to his admitted status as a habitual substance offender is inappropriate. We will consider each of Hiten's contentions in turn.

## I. Abuse of Discretion

Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the

logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted). When imposing a sentence in a felony case, the trial court must provide a reasonably detailed sentencing statement explaining its reason for imposing the sentence. *Id.*

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id.* at 490-91.

[13] Hiten does not argue on appeal that the aggravating factors found by the trial court are not supported by the record. Rather, he claims that the trial court abused its discretion by failing to find certain factors to be mitigating in nature. These allegedly mitigating factors include: (1) his crimes were the result of circumstances that were unlikely to reoccur; (2) his character and attitude indicate that he is unlikely to commit any other criminal offenses; (3) he pled guilty; and (4) imprisonment would result in undue hardship on his dependents.

[14] Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). A trial court is neither required to find the presence of mitigating factors, *Fugate v. State*, 608 N.E.2d 1370, 1374 (citing *Graham v. State*, 535 N.E.2d 1152, 1155 (Ind. 1989)), nor obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001) (citing *Birdsong v. State*, 685 N.E.2d 42, 47 (Ind. 1997)). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Henderson*, 769 N.E.2d at 179 (internal quotations omitted). Furthermore, while Indiana law mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, *id.*, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

## A. Crimes the Result of Circumstances Unlikely to Reoccur

[15] Hiten asserts that the trial court abused its discretion by failing to find as a mitigating factor that his crimes were the result of circumstances that were unlikely to reoccur. In support, Hiten argues that he had "turned a corner" in his life and become more calm, that he had stopped associating with the wrong

people, that he had become a role model, and that he was no longer involved with any activity relating to illegal substances. Appellant's Br. p. 5. The record demonstrates, however, that although the trial court considered Hiten's claim, it ultimately determined that the claim was not entitled to mitigating weight.

[16] In sentencing Hiten, the trial court stated that while Hiten and his family believed that Hiten had "turned a corner," the court found that it was "not really clear" that he had done so. Tr. p. 203. In making this finding, the trial court noted that while Hiten had claimed that he was no longer involved with any activity relating to illegal substances, he had also admitted that he continued to use illegal substances pending the outcome of the instant matter. In addition, Hiten had failed to follow through on Dr. Keglar's year-old recommendation that he complete another assessment relating to his drug use and/or need for drug treatment.

[17] Furthermore, although both Hiten and certain friends and family members testified that he had become more calm, had stopped hanging out with the wrong people, and had become a role model, the trial court was in the best position to judge the credibility of these witnesses. *See Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002). We will not reassess the credibility of these witnesses on appeal. *See id*. Hiten has failed to prove that the claimed mitigating evidence is both significant and clearly supported by the record or that it warranted significant mitigating weight.

## B. Hiten's Character and Attitude Indicate that Hiten is Unlikely to Commit Another Criminal Offense

[18] Hiten also asserts that the trial court abused its discretion in failing to consider his claim that his character and attitude indicated that he was unlikely to commit any other criminal offenses. The record, however, indicates that the trial court did consider this claim and found that, despite Hiten's contrary belief, the claim did not warrant mitigating weight.

[19] In evaluating Hiten's character and attitude, the trial court noted that (1) Hiten had a substantial criminal history; (2) Hiten had previously been placed on probation, but had violated the terms of his probation; and (3) previous attempts at drug treatment outside of a penal facility had been unsuccessful. Further, the trial court noted that while Hiten had admitted guilt in the instant matter, he did not accept responsibility for his actions. Instead, he concentrated on the actions of others and attempted to place blame on these other individuals. The trial court was in the best position to judge Hiten's credibility as it related to his claim that his character and attitude indicted that he was unlikely to commit any other criminal offenses, and we will not reassess his credibility on appeal. *See id.*

[20] In addition, to the extent that Hiten relies on (1) Dr. Keglar's recommendation that Hiten be placed in an intensive outpatient treatment facility rather than a penal facility, (2) Dr. Keglar's alternative opinion that Hiten was likely to respond positively to short term imprisonment or probation, and (3) the

determination that he had a low to moderate risk of reoffending[1] in support of his claim, we note that the trial court was not required to assign these items the same weight as Hiten. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *Marshall v. State*, 621 N.E.2d 308, 320 (Ind. 1993); *Nelson v. State*, 525 N.E.2d 296, 297 (Ind. 1988). Hiten has again failed to prove that the claimed mitigating evidence is both significant and clearly supported by the record or that it warranted significant mitigating weight.

## C. Hiten's Guilty Plea

[21] Hiten also asserts that the trial court abused its discretion by failing to find the fact that he pled guilty to be a mitigating factor at sentencing. "[A]lthough we have long held that a defendant who pleads guilty deserves 'some' mitigating weight to be given to the plea in return, a guilty plea may not be significantly mitigating when the defendant receives a substantial benefit in return or when the defendant does not show acceptance of responsibility." *McElroy v. State*, 865 N.E.2d 584, 591 (Ind. 2007) (citations omitted).

[22] In the instant matter, Hiten's decision to plead guilty seems to represent a tactical decision rather than a true showing of remorse as Hiten received a great benefit in return for his guilty plea. Hiten was originally charged with one Class B felony, three Class C felonies, two Class D felonies, and a Class A

---

[1] This determination was made in connection with Hiten's pre-sentence investigation report by using the Indiana Risk Assessment System Community Supervision Tool.

misdemeanor. The State also alleged that Hiten was a habitual substance offender. Pursuant to the terms of Hiten's plea agreement, the State agreed to allow Hiten to plead guilty to two Class D felonies and to being a habitual substance offender. The Class D felonies to which Hiten pled guilty were lesser included offenses of the Class B felony and one of the Class C felonies. In exchange for Hiten's plea to these lesser included offenses and to being a habitual substance offender, the State agreed to dismiss the remaining criminal charges. Also in exchange for Hiten's plea, the State agreed to cap his sentence at no more than eight years, which is far below the maximum potential sentence that he could have received had he been found guilty of each of the charged offenses following trial. Hiten undoubtedly benefited from the State's actions in this regard. Thus, Hiten has failed to demonstrate that his guilty plea warranted significant mitigating weight.

## D. Alleged Hardship on Hiten's Dependents

[23] Hiten last asserts that the trial court abused its discretion by failing to find that his incarceration would be a hardship on his father, for whom he helps provide care. In making this assertion, Hiten claims that he is the primary caregiver for his father, who is blind.

[24] We have previously concluded that a trial court "is not obligated to find a circumstance to be mitigating merely because the defendant advances it." *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009) (citing *Felder v. State*, 870 N.E.2d 554, 558 (Ind. Ct. App. 2007)). More specifically, a trial court is not required to find that a defendant's incarceration would result in undue

hardship on his dependents. *Id.* (citing *Roney v. State*, 872 N.E.2d 192, 204 (Ind. Ct. App. 2007), *trans. denied*). In reaching this conclusion we observed that "[m]any persons convicted of crimes have dependents and, absent special circumstances showing that the hardship to them is 'undue,' a trial court does not abuse its discretion by not finding this to be a mitigating factor." *Id.* (citing *Roney*, 872 N.E.2d at 204-05). In order for the hardship to the dependent to be "undue," there must be special circumstances that make the burden on the dependent unusual. *See generally, id.* at 247-48.

[25] The trial court heard testimony which indicated that Hiten was the primary caregiver for his father. Specifically, the trial court heard that Hiten would check on his father "almost every day," would take him places, and would take care of his father's financial matters. Tr. p. 98. It is clear from the record that the trial court considered this testimony, but that it simply did not afford Hiten's claim with the mitigating weight Hiten believed it should have been granted. Again, "[a] trial court is not obligated to weigh or credit the mitigating factors the way a defendant suggests they should be weighed or credited." *Jones v. State*, 790 N.E.2d 536, 540 (Ind. Ct. App. 2003) (citing *Georgopulos v. State*, 735 N.E.2d 1138, 1145 (Ind. 2000)). Hiten has again failed to demonstrate that his claim is both significant and clearly supported by the record or that it warranted significant mitigating weight.

[26] In sum, Hiten has failed to demonstrate that any of the proffered mitigating factors were both significant and clearly supported by the record or warranted

significant mitigating weight.  As such, we conclude that the trial court did not abuse its discretion in sentencing Hiten.

## II.  Habitual Substance Offender Enhancement

[27]   In challenging the appropriateness of the four-year sentence enhancement imposed by the trial court by virtue of Hiten's status as a habitual substance offender, Hiten claims that the trial court should have only imposed a one-year sentence enhancement.  In support, he cites to Indiana Code sections 35-50-2-10(f) and (g), which provide as follows:

> (f) The court shall sentence a person found to be a habitual substance offender to an additional fixed term of at least three (3) years but not more than eight (8) years imprisonment, to be added to the term of imprisonment imposed under [Indiana Code section] 35-50-2 or [Indiana Code section] 35-50-3.  If the court finds that:
>
>> (1) three (3) years or more have elapsed since the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated substance offense conviction and the date the person committed the substance offense for which the person is being sentenced as a habitual substance offender; or
>> (2) all of the substance offenses for which the person has been convicted are substance offenses under [Indiana Code section] 16-42-19 or [Indiana Code section] 35-48-4, the person has not been convicted of a substance offense listed in section 2(b)(4) of this chapter, and the total number of convictions that the person has for:

(A) dealing in or selling a legend drug under [Indiana Code section] 16-42-19-27;
(B) dealing in cocaine or a narcotic drug ([Indiana Code section] 35-48-4-1);
(C) dealing in a schedule I, II, or III controlled substance ([Indiana Code section] 35-48-4-2);
(D) dealing in a schedule IV controlled substance ([Indiana Code section] 35-48-4-3); and
(E) dealing in a schedule V controlled substance ([Indiana Code section] 35-48-4-4);

does not exceed one (1);

then the court *may* reduce the additional fixed term. However, the court may not reduce the additional fixed term to less than one (1) year.

(g) If a reduction of the additional year fixed term is authorized under subsection (f), the court may also consider the aggravating or circumstances in [Indiana Code section] 35-38-1-7.1(a) and the mitigating circumstances in [Indiana Code section] 35-38-1-7.1(b) to:

(1) decide the issue of granting a reduction; or
(2) determine the number of years, if any, to be subtracted under subsection (f).

(Emphasis added).

[28] Initially we note that Indiana Code section 35-50-2-10(f) provides that if a defendant meets the stated criteria, the trial court *may* reduce the term, not *must* reduce the term. In deciding whether to reduce the term, the trial court *may* consider the aggravating and mitigating factors. Ind. Code § 35-50-2-10(g). Hiten claims that the trial court abused its discretion by not considering the above-discussed proffered mitigating factors. Having concluded above that the trial court did not abuse its discretion in this regard, we will turn our focus to the question of whether the four-year sentence enhancement imposed by the trial court is inappropriate.

[29] Indiana Appellate Rule 7(B) provides that "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." In analyzing such claims, we "'concentrate less on comparing the facts of [the case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentenced, and what it reveals about the defendant's character.'" *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (quoting *Brown v. State*, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), *trans. denied*). The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008).

[30] With regard to the nature of his offenses, the record demonstrates that Hiten is a self-admitted methamphetamine producer and dealer. Hiten described himself as a "middle man," stating that he receives products of various types

from other individuals, produces methamphetamine, and distributes the methamphetamine to individuals in Bartholomew and Brown Counties. Tr. p. 157. At the time of Hiten's arrest, he was in possession of approximately 292,000 pseudoephedrine pills, enough to produce over forty pounds of methamphetamine. The staggering number of pseudoephedrine pills found in Hiten's possession suggests that Hiten was involved in a large-scale drug operation.

[31] With regard to Hiten's character, the record demonstrates that Hiten has shown an ongoing disregard for the law. Hiten has an extensive criminal history dating back to at least 1982. His prior felony convictions include convictions for theft, criminal recklessness, possession of a firearm by a convicted felon, dealing in cocaine, maintaining a common nuisance, possession of marijuana, and multiple convictions for possession of methamphetamine. His prior misdemeanor convictions include convictions for reckless driving, public intoxication, theft, operating a vehicle while intoxicated, and multiple convictions for battery. In addition, prior attempts at leniency and outpatient treatment have failed. Hiten has also refused to accept responsibility for his actions but rather has attempted to shift the blame to others. He has also admitted that he continued to engage in illegal activity during the pendency of this criminal matter.

[32] Upon review, we conclude that the record demonstrates that Hiten was involved in a large-scale drug operation. The record also reflects poorly on Hiten's character. As such, we conclude that Hiten has failed to prove that the

four-year enhanced sentence imposed by the trial court by virtue of Hiten's status as a habitual substance offender was inappropriate.

# Conclusion

[33] In sum, we conclude that the trial court acted within its discretion in sentencing Hiten and that the four-year sentence enhancement relating to Hiten's status as a habitual substance offender is not inappropriate.

[34] The judgment of the trial court is affirmed.


May, J., and Crone, J., concur.